**LAW OFFICES OF NICHOLAS J. PALMA, ESQ., P.C.**
**VALERIE PALMA DELUISI, ESQ.**
1425 Broad Street, Second Floor
Clifton, New Jersey 07013
Phone: 973-471-1121
Facsimile: 973-472-0032
VPD@PalmaLawFirm.com
*Attorney for Plaintiff Anthony Cappel*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY CAPPEL,<br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF ESSEX, ARMANDO B. FONTOURA, Individually and in his official capacity as Sheriff of Essex County, JAMES SPANGO, Individually and in his official capacity as Chief of Essex County Sheriff's Office, JOHN GONCALVES, Individually and in his official capacity as Undersheriff of Essex County, and JOHN/JANE DOES 1-10,<br>　　　　　　　Defendants. | Civil Action No.:<br><br><br>**COMPLAINT & JURY DEMAND** |

**PLAINTIFF ANTHONY CAPPEL**, by and through his undersigned counsel, Valerie Palma DeLuisi, Esq. of the Law Offices of Nicholas J. Palma, Esq., PC, by way of Complaint against Defendants, does hereby state as follows:

### PARTIES

1.　　Plaintiff Anthony Cappel, at all times relevant herein, was and is employed by Defendant County of Essex, as an Essex County Sheriff's Officer.

2.　　Defendant County of Essex, employer of Plaintiff and co-Defendants, is a governmental entity organized under the laws of the State of New Jersey, with its principal offices

located at the Hall of Records, 465 Dr. Martin Luther King, Jr. Blvd., in the City of Newark, County of Essex, State of New Jersey.

3.      Defendant Armando B. Fontoura, for all times relevant herein, was and is the elected Sheriff of Essex County.  He is named herein in his individual and official capacity.

4.      Defendant James Spango, for all times relevant herein was and is employed by the County of Essex, as Chief of Essex County Sheriff's Office.  He is named herein in his individual and official capacity.

5.      Defendant John Goncalves, for all times relevant herein was and is employed by the County of Essex, as Undersheriff of Essex County Sheriff's Office.  He is named herein in his individual and official capacity.

6.      John/Jane Does 1-10 are individuals whose identities are presently unknown to Plaintiff and who are believed to be employees/agents of Defendants, who have participated as actors, agents, co-conspirators and/or aiders and abettors in the wrongful conduct described in the within Complaint and who thereby caused or contributed to the substantial damage and injury to the Plaintiff.


## JURISDICTION

7.      United States District Court for the District of New Jersey has original subject matter jurisdiction over this matter, pursuant to 28 U.S.C. § 1331.

8.      United States District Court for the District of New Jersey has supplemental jurisdiction over New Jersey State Law claims that form part of within case and controversy, pursuant to 28 U.S.C. § 1367.

## **VENUE**

9.      Venue is properly vested in the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1391, as Plaintiff Anthony Cappel and Defendants reside or are headquartered in the State of New Jersey, and the claims herein arose within the jurisdictional limits of the United States District Court for the District of New Jersey.

## **FACTUAL BACKGROUND**

10.      Plaintiff Cappel, an African American military veteran, was hired by Essex County Sheriff's Office in December 2017.

11.      In August 2018, Officer Cappel was transferred to the Transportation Division, thus placing him under the command of Defendant Goncalves.

12.       The chain of command in the Transportation Division at the time was Officers/Detectives, three Sergeants, a Captain and then Undersheriff (Defendant) Goncalves.

13.      Defendant Goncalves, who has a well-documented history of discriminating against his subordinates based on race and gender, began targeting Plaintiff Cappel for disparate treatment.

14.      At all times relevant herein, it was the custom and practice for the Transportation Division Sergeant to approve an Officer's request for a day off.

15.      However, Defendant Goncalves advised the Transportation Captain that only he (Defendant Goncalves) was allowed to approve Plaintiff's time off.  Everyone else could have their time off approved by the Sergeant.

16.      Defendant Goncalves further advised the Transportation Captain that Plaintiff was not permitted to take off on a Monday or a Friday.  This limitation applied to Plaintiff only.

17.     Moreover, Defendant Goncalves' limitation on Plaintiff's days off even extended to "comp time".

18.     "Comp time" is payment in hours, rather than money, for overtime hours worked. Officers may accrue comp time and utilize the same for time off on a day of their choosing.

19.     Since the Officer utilizing comp time has already worked for and thus earned the time off, there are typically no limitations on when an Officer may take a day off utilizing comp time.

20.     Additionally, Defendant Goncalves often approved Plaintiff's requests for time off and then rescind his approval at the last minute, causing Plaintiff to alter his plans or come into work on a day that he had been approved to take off.

21.     Defendant Goncalves began personally following Plaintiff in an unmarked Sheriff's Office vehicle when Plaintiff was transporting inmates to and from Essex County Correctional Facility.  Defendant Goncalves would go so far as to wait across the street from Essex County Correctional Facility when Plaintiff went inside with inmates, so that he could continue following Plaintiff when Plaintiff exited the facility.

22.     Defendant Goncalves would then compare Plaintiff's logbooks and radio transmissions with his personal observations, seeking to find discrepancies.  However, there were never any discrepancies to find.

23.     In March 2020, Plaintiff was transferred from the Transportation Division to the Office of Emergency Management ("OEM"), thereby removing him from Defendant Goncalves' command.

24.     However, Plaintiff's transfer out of Defendant Goncalves' command did not eliminate Defendant Goncalves' harassment of Plaintiff.

25.     On April 20, 2021, Plaintiff worked until 3:00pm in OEM, in accordance with his normal schedule.

26.     At approximately 5:00pm that evening, Defendant Goncalves called Plaintiff on his personal cell phone and ordered Plaintiff to report to the Transportation Division because Plaintiff was needed to operate a Sheriff's Office bus until 11:00pm that night.

27.     Plaintiff, quite confused by this unheard-of direct order from an Undersheriff for whom he did not work, reminded Defendant Goncalves that he was assigned to OEM, not Transportation, and he was on the day shift, from 7am-3pm.

28.     Plaintiff further advised Defendant Goncalves that he was currently in Brooklyn, so due to travel time, he was unable to immediately report to the Transportation Division.

29.     Defendant Goncalves ordered Plaintiff to leave Brooklyn immediately and drive straight to the Transportation Division.

30.     Pursuant to Defendant Goncalves' order, Plaintiff left Brooklyn immediately and drove straight to the Transportation Division, where he worked as ordered by Defendant Goncalves.

31.     The West Orange St. Patrick's Day Parade took place on **Sunday, March 13, 2022**. As is typical, Defendant Fontoura sought Officers to "volunteer" to participate in the parade, on their day off, for no compensation.

32.     Plaintiff was asked to participate in the parade, but he politely declined.

33.     Just four days after the parade, on **Thursday, March 17, 2022**, Plaintiff was advised that effective *the next day*, he was being transferred from OEM back to the Transportation Division.

34.     This transfer placed Plaintiff back under the command of Defendant Goncalves.

35.    Defendant Goncalves' disparate treatment of Plaintiff began almost immediately.

36.    Essex County Sheriff's Special Order 2020-45(A) was first entered on June 19, 2020 and is still in effect today.  It requires, in applicable part, all Sheriff's Office personnel to wear a "facemask or other face covering" while in common areas.

37.    Since the pandemic began, Plaintiff has utilized a "gaiter mask" as his face covering at work most days.

38.    On **Tuesday, March 22, 2022**, Plaintiff wore a gaiter mask with the Sheriff's Office logo on the front.

39.    This type of gaiter mask is commonly worn by Officers at Essex County Sheriff's Office.

40.    On the morning of March 22, 2022, Plaintiff had no direct contact with Defendant Goncalves, and Defendant Goncalves was not physically present in the Transportation Division.

41.    However, Plaintiff's Sergeant approached Plaintiff and advised that Defendant Goncalves called on the phone and relayed an order for Plaintiff to remove his Sheriff's Office-logo gaiter mask and replace it with a different mask.

42.    The only way Defendant Goncalves could have seen Plaintiff's face covering is if Defendant Goncalves was watching Plaintiff on a surveillance camera.

43.    It is well known throughout Essex County Sheriff's Office that Defendant Goncalves targets certain African American Officers for constant surveillance.

44.    In fact, Defendant Goncalves is currently the defendant in a lawsuit titled Shai Carr v. County of Essex, Armando B. Fontoura, John Goncalves, Jacqueline Jones and John/Jane Does 1-10 (Civil Action no. 2:20-cv-20587), wherein Plaintiff Carr (an African American female)

alleges that Defendant Goncalves ordered a fellow Officer to constantly watch Plaintiff Carr on surveillance camera and report his findings back to Defendant Goncalves.

45.     It appears that this time, Defendant Goncalves engaged in the surveillance himself.

46.     Plaintiff Cappel immediately followed his Sergeant's order and replaced his gaiter mask with a surgical mask provided by the Sergeant.

47.     Plaintiff asked his Sergeant what about his Sheriff's Office-logo gaiter mask was offensive or improper.  Plaintiff's Sergeant responded that had no idea, since he was merely the messenger of Defendant Goncalves' order, and Defendant Goncalves did not provide the Sergeant with an explanation as to why Plaintiff could not wear his gaiter mask.

48.     Plaintiff appeared at work for the rest of the week wearing a different gaiter mask, and he had no issue.

49.     On **Monday, March 28, 2022**, Plaintiff appeared at work wearing a gaiter mask bearing the American flag in muted gray tones.

50.     At approximately 10:03am, Plaintiff was called into his Sergeant's office.  The Sergeant advised that he received a text message from Defendant Goncalves, ordering the Sergeant to order Plaintiff to remove his gaiter mask and refrain from wearing gaiter masks in the future. When Plaintiff asked the Sergeant why he was no longer permitted to wear a gaiter mask, the Sergeant stated that Defendant Goncalves "dislikes gaiter masks".

51.     Once again, Plaintiff had no direct contact with Defendant Goncalves that day, nor was Defendant Goncalves present in the Transportation Division.  Therefore, the only logical inference is that Defendant Goncalves was, once again, watching Plaintiff on surveillance camera.

52.     There were multiple white Officers and Superior Officers at work that day with gaiter masks on, just as there are every day.  However, none of those individuals were ordered to remove their gaiter masks.

53.     Being tired of the constant harassment by Defendant Goncalves, Plaintiff authored an internal report, referred to as a "151" at Essex County Sheriff's Office, and therein outlined the harassment and discrimination he has been suffering at the hands of Defendant Goncalves.

54.     Specifically, Plaintiff set forth the two instances in which he was singled out to remove his gaiter mask, and he attached Sheriff's Special Order 2020-45(A), to evidence that his gaiter mask was permissible pursuant to the same.

55.     Plaintiff's 151 also expressed Plaintiff's belief that he was being unfairly and unjustly targeted by Defendant Goncalves because he is an African American.  Plaintiff explained that he felt personally targeted and attacked by Defendant Goncalves, who was creating a hostile and discriminatory work environment.  Plaintiff expressed that he had to walk on eggshells to appease Defendant Goncalves, who creates issues to harass Plaintiff.

56.     Plaintiff submitted the 151 to his Sergeant, to be sent up the Chain of Command.

57.     The Chain of Command at Essex County Sheriff's Office is Officer – Sergeant – Lieutenant – Captain – Undersheriff – Chief James Spango – Sheriff Armando Fontoura.

58.     Once Sheriff Fontoura receives a harassment or discrimination complaint from Chief Spango, Sheriff Fontoura is supposed to forward the same to the Internal Affairs Bureau.

59.     The Internal Affairs Bureau is supposed to forward the report to the County's Office of the Inspector General, a division of the Office of the Essex County Counsel.

60.     On **March 29, 2022**, the day after he submitted his 151 alleging discrimination and harassment by Defendant Goncalves, Plaintiff was on a day-long special assignment with the motorcycle squad.

61.     The following day, **March 30, 2022**, Plaintiff reported to the Transportation Division and was assigned the task of transporting an inmate from Essex County Correctional Facility to the Union County courthouse, then wait for the inmate's court appearance to conclude, and then transport the inmate back to Essex County Correctional Facility.  Plaintiff performed this task without issue.

62.     When Plaintiff reported back to the Transportation Division at the completion of his task, he was informed by his Sergeant that the Sergeant had been ordered to retrieve Plaintiff's duty weapon and ammunition magazines, because Plaintiff was not permitted to carry the same. The Sergeant informed Plaintiff that if he had any questions, he should contact the Internal Affairs Bureau.

63.     Plaintiff immediately walked over to the Internal Affairs Bureau and met with Captain Evelyn Velez and Lieutenant William Penn.

64.     Captain Velez and Lieutenant Penn advised Plaintiff that since his 151 contained the word "stress", his weapon was being taken "for his protection" and he was being ordered to attend a psychological evaluation.

65.     Plaintiff reminded Captain Velez and Lieutenant Penn that he was "stressed" because he was being discriminated against by Defendant Goncalves, and he wrote the 151 seeking protection from the department.  But instead of protecting him, the Sheriff's Office was labeling him mentally unfit and placing his career in jeopardy.

66.     Neither Captain Velez nor Lieutenant Penn expressed any concern over Plaintiff's allegations against Defendant Goncalves, nor did they ask any questions about those allegations.

67.     Plaintiff advised Captain Velez and Lieutenant Penn that he was scheduled to work 27 hours of overtime within the next week.

68.     Captain Velez and Lieutenant Penn advised Plaintiff that he would not be permitted to work those overtime assignments, nor would he be permitted to remain in the Transportation Division, since he would not have a weapon, which is necessary for transporting inmates.

69.     Captain Velez and Lieutenant Penn advised Plaintiff that effective the next day, Plaintiff would be assigned to the Bureau of Criminal Identification ("BCI"), an office assignment inside the courthouse which does not require an Officer to carry his firearm.

70.     Notably, Plaintiff owns other firearms, two of which he had previously registered with Essex County Sheriff's Office, for off-duty carry use.

71.     Neither Captain Velez nor Lieutenant Penn made any mention of Plaintiff's other firearms, nor did they advise Plaintiff that he was not permitted to carry off-duty.

72.     Neither Captain Velez nor Lieutenant Penn nor Chief Spango nor Sheriff Fontoura contacted Plaintiff that evening, to ensure his well-being.  If they were concerned about Plaintiff's mental health, surely at least one of them would have performed at least a telephonic wellness check on Plaintiff after-hours.

73.     Moreover, if Defendants truly believed that Plaintiff may have been a danger to himself or others, then why was he permitted to transport an inmate from Essex County Correctional Facility to Union County Courthouse in Elizabeth, then wait inside the courthouse, then transport the inmate back to Essex County Correctional Facility, all while armed?  To date, Defendants have provided no answer.

74.     The following day, **March 31, 2022**, Plaintiff underwent a psychological evaluation with Susan A. Furnari, D.Ed. ("Dr. Furnari"), a licensed psychologist chosen by Defendants.

75.     At the conclusion of the evaluation, Dr. Furnari advised Plaintiff that he was psychologically fit for duty, and she believed Plaintiff's 151 was taken grossly out of context.

76.     Subsequent to Officer Cappel's psychological evaluation, he immediately notified PBA Local 183 President Robert Slater of the outcome.

77.     President Slater immediately began texting Chief James Spango, a named Defendant.

78.     As Chief of the Sheriff's Office, Defendant Spango is responsible for overseeing the day-to-day operations of the entire Sheriff's Office, including all Personnel.  This is confirmed on the Sheriff's Office website (EssexSheriff.com).

79.     President Slater sent a series of text messages to Defendant Spango, stating the following:

a)   [Plaintiff] Cappel was declared fit for duty by Dr. Furnari, so Cappel should be immediately rearmed, and he should receive an apology for the embarrassment he endured by having his mental stability questioned in retaliation for writing a report complaining of the selective, discriminatory treatment he suffered.

b)   [Defendant] Goncalves has had numerous discrimination complaints filed against him in the past, and this incident was one more example of Goncalves' bias against African Americans.

c)   Your [Defendant Spango's] failure to act is passive approval of Goncalves' ongoing discrimination.

d) Goncalves should be mentally evaluated and sent for diversity training as well as management classes. How many complaints against Goncalves are needed before action is taken?

80. Sadly, to date, no action has been taken to address the allegations made in Plaintiff's 151 or the allegations made against Defendant Goncalves by numerous other African American officers before Plaintiff.

81. To be clear, neither Defendant Spango, Defendant Fontoura, Internal Affairs or the Inspector General have interviewed or even informally questioned Plaintiff Cappel about the allegations in his 151. Plaintiff's allegations have been entirely ignored by everyone in a position to address them.

82. On **April 12, 2022**, 12 days after Dr. Furnari found him mentally fit, Defendants finally returned Plaintiff's duty weapon.

83. However, Plaintiff was not returned to his assignment in the Transportation Division.

84. Defendant Spango advised President Slater that Plaintiff was to remain assigned to BCI, so he is removed from Defendant Goncalves' command.

85. However, this reassignment has cost Plaintiff the ability to earn overtime on a regular basis.

86. Because he is not trained to perform BCI functions (such as fingerprint analysis, ballistic analysis, etc.), Plaintiff has been relegated to work in the "auto squad" (a subdivision of BCI). Plaintiff's job duties entail largely secretarial work pertaining to towed vehicles.

87. The Transportation Division affords significant overtime opportunities, and the auto squad offers none.

88.     Therefore, in addition to losing the 27 hours of overtime he was scheduled to work but lost while he was without his duty weapon, Plaintiff is losing overtime opportunities on a constant basis, due to his new assignment.

89.     Defendant Spango has exhibited managerial indifference to the discrimination and harassment of Plaintiff by Defendant Goncalves.  Moreover, Defendant Spango's transfer of Plaintiff to an assignment that affords less overtime opportunities, while Defendant Goncalves remains free from any consequences, is a gross dereliction of Defendant Spango's responsibility to supervise and address employee complaints.

90.     Defendant Spango promised President Slater, via text message, that he would "address" President Slater's concerns with Defendant Fontoura.  However, to date, no response has been received by Defendant Spango or Defendant Fontoura about a resolution to the ongoing discrimination, retaliation and harassment being suffered by Plaintiff Cappel and others at the hands of Defendant Goncalves.

91.     Defendant Goncalves is under Defendant Spango and Defendant Fontoura in the Chain of Command.  Therefore, Defendants Spango and Fontoura, jointly or severally, have a duty to address and rectify Defendant Goncalves' discriminatory employment practices.  Defendants Spango and Fontoura have failed or refused to do so.  They are thus liable to Plaintiff Cappel for damages.

92.     As a result of Defendants' wrongful conduct, Plaintiff Cappel has suffered and continues to suffer severe and substantial monetary damages, as well as emotional distress, pain and suffering, loss of reputation, loss of future employability and public humiliation.  Further, Plaintiff has been compelled to file the within litigation to vindicate his rights.  Additionally, Plaintiff has been otherwise injured.

<u>**COUNT ONE**</u>
**VIOLATION OF 14th AMENDMENT OF THE
UNITED STATES CONSTITUTION**

93.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint, as if set forth at length herein.

94.     The 14th Amendment of the United States Constitution, in salient part, forbids the State from making or enforcing any law which shall abridge the privileges or immunities of a citizen, nor shall any State deprive a person of life, liberty or property without due process of law, nor shall any State deny any person equal protection of the laws.

95.     As described in the preceding paragraphs of this Complaint, Defendants intentionally discriminated against Plaintiff Cappel in a serious and tangible way with respect to the terms, conditions and/or privileges of employment.

96.     Plaintiff Cappel's race was a motivating factor in Defendants' actions against Plaintiff.   Defendants' actions therefore violated the Equal Protection Clause of the 14th Amendment of the United States Constitution.

97.     As a result of Defendants' wrongful conduct, Plaintiff Cappel has suffered and continues to suffer severe and substantial monetary damages, as well as emotional distress, pain and suffering, loss of reputation, loss of future employability and public humiliation.  Further, Plaintiff has been compelled to file the within litigation to vindicate his rights.  Additionally, Plaintiff has been otherwise injured.

**WHEREFORE,** Plaintiff Cappel demands judgment against Defendants, jointly or severally, for the following relief:

i.     Compensatory Damages, together with pre-judgment and post-judgment interest thereon;

ii.   Additional consequential and incidental damages, in a sum to be determined at trial, together with pre-judgment and post-judgment interest thereon;
iii.   An award of Compensatory Damages for pain and suffering;
iv.   An award of Punitive Damages;
v.   An award of attorney's fees and costs of suit; and
vi.   Any such other relief that this Honorable Court deems equitable and just.

## COUNT TWO
## VIOLATION OF 42 <u>U.S.C.</u> § 1983
### (Defendant Fontoura, Defendant Spango and Defendant Goncalves only)

98.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint, as it set forth herein at length.

99.   As described in the preceding paragraphs of this Complaint, Defendants Fontoura, Spango and Goncalves, while acting under the color of law, deprived Plaintiff Cappel of equal protection rights, privileges and/or immunities secured by the 14th Amendment of the Constitution of the United States.

100.   As a result of Defendants' wrongful conduct, Plaintiff Cappel has suffered and continues to suffer severe and substantial monetary damages, as well as emotional distress, pain and suffering, loss of reputation, loss of future employability and public humiliation.  Further, Plaintiff has been compelled to file the within litigation to vindicate his rights.  Additionally, Plaintiff has been otherwise injured.

**WHEREFORE,** Plaintiff Cappel demands judgment against Defendants Fontoura, Spango and Goncalves, jointly or severally, for the following relief:

i.   Compensatory Damages, together with pre-judgment and post-judgment interest thereon;
ii.   Additional consequential and incidental damages, in a sum to be determined at trial, together with pre-judgment and post-judgment interest thereon;
iii.   An award of Compensatory Damages for pain and suffering;
iv.   An award of Punitive Damages;

v.    An award of attorney's fees and costs of suit; and

vi.   Any such other relief that this Honorable Court deems equitable and just.

## <u>COUNT THREE</u>
## VIOLATION OF NEW JERSEY LAW AGAINST DISCRIMINATION
## (<u>N.J.S.A.</u> 10:5-1, *et. seq.*)

101.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint, as it set forth herein at length.

102.   Plaintiff Cappel, an African American military veteran, is a member of a protected class, pursuant to <u>N.J.S.A.</u> 10:5-1, *et seq.*

103.   Because he is an African American, Plaintiff Cappel was treated less favorably with respect to the terms, conditions and/or privileges of employment than were similarly situated white employees.

104.   As a result of Defendants' wrongful conduct, Plaintiff Cappel has suffered and continues to suffer severe and substantial monetary damages, as well as emotional distress, pain and suffering, loss of reputation, loss of future employability and public humiliation.  Further, Plaintiff has been compelled to file the within litigation to vindicate his rights.  Additionally, Plaintiff has been otherwise injured.

**WHEREFORE,** Plaintiff Cappel demands judgment against Defendants, jointly or severally, for the following relief:

i.    Compensatory Damages, together with pre-judgment and post-judgment interest thereon;

ii.   Additional consequential and incidental damages, in a sum to be determined at trial, together with pre-judgment and post-judgment interest thereon;

iii.  An award of Compensatory Damages for pain and suffering;

iv.   An award of Punitive Damages;

v.    An award of attorney's fees and costs of suit; and

vi.   Any such other relief that this Honorable Court deems equitable and just.

## COUNT FOUR
## VIOLATION OF NEW JERSEY CIVIL RIGHTS ACT
### (NJ Rev. Stat. § 10:6-2(c))

105.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint, as if set forth herein at length.

106.    As described in the preceding paragraphs of this Complaint, Plaintiff Cappel has been deprived of the equal protection rights, privileges and/or immunities secured by the Constitution of the United States and/or the laws of the United States and/or the Constitution of the State of New Jersey and/or the laws of the State of New Jersey, and/or Plaintiff Cappel's exercise and/or enjoyment of his substantive rights, privileges and/or immunities has been interfered with by Defendants.

107.    As a result of Defendants' wrongful conduct, Plaintiff Cappel has suffered and continues to suffer severe and substantial monetary damages, as well as emotional distress, pain and suffering, loss of reputation, loss of future employability and public humiliation.  Further, Plaintiff has been compelled to file the within litigation to vindicate his rights.  Additionally, Plaintiff has been otherwise injured.

**WHEREFORE,** Plaintiff Cappel demands judgment against Defendants, jointly or severally, for the following relief:

i.    Compensatory Damages, together with pre-judgment and post-judgment interest thereon;
ii.   Additional consequential and incidental damages, in a sum to be determined at trial, together with pre-judgment and post-judgment interest thereon;
iii.  An award of Compensatory Damages for pain and suffering;
iv.   An award of Punitive Damages;
v.    An award of attorney's fees and costs of suit; and
vi.   Any such other relief that this Honorable Court deems equitable and just.

## <u>COUNT FIVE</u>
## <u>VIOLATION OF CONSCIENTIOUS EMPLOYEE PROTECTION ACT</u>
## <u>N.J.S.A.</u> § 34:19-1, *et seq.* ("NJ WHISTLEBLOWER ACT")

108.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint, as if set forth herein at length.

109.    When Plaintiff authored his 151 outlining the discrimination he was suffering at the hands of Defendant Goncalves and submitted the same up his chain of command, Plaintiff "blew the whistle" on conduct that Plaintiff believed in good faith to be illegal, unsafe, against County policy, against public policy and/or a matter of public importance.

110.    Defendants have taken no action to address the allegations made in Plaintiff's 151.

111.    Instead, Defendants have taken and continue to take adverse employment action against Plaintiff because Plaintiff blew the whistle.

112.    As a result of Defendants' wrongful conduct, Plaintiff Cappel has suffered and continues to suffer severe and substantial monetary damages, as well as emotional distress, pain and suffering, loss of reputation, loss of future employability and public humiliation. Further, Plaintiff has been compelled to file the within litigation to vindicate his rights. Additionally, Plaintiff has been otherwise injured.

**WHEREFORE,** Plaintiff Cappel demands judgment against Defendants, jointly or severally, for the following relief:

    i.    Compensatory Damages, together with pre-judgment and post-judgment interest thereon;

    ii.    Additional consequential and incidental damages, in a sum to be determined at trial, together with pre-judgment and post-judgment interest thereon;

    iii.    An award of Compensatory Damages for pain and suffering;

    iv.    An award of Punitive Damages;

    v.    An award of attorney's fees and costs of suit; and

    vi.    Any such other relief that this Honorable Court deems equitable and just.

## <u>COUNT SIX</u>
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

113.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint, as if set forth at length herein.

114.    As described in the preceding paragraphs of this Complaint, Defendants acted intentionally and purposefully to cause Plaintiff Cappel emotional distress and injury, and/or Defendants acted recklessly, in deliberate disregard of a high degree of probability that emotional distress would follow.

115.    Defendants' conduct was so extreme in degree and outrageous in character as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

116.    Defendant's actions were the proximate cause of Plaintiff's emotional distress.

117.    The emotional distress suffered by Plaintiff was so severe that no reasonable person could be expected to endure such distress.  As such, Defendant's conduct was sufficiently severe to cause genuine and substantial emotional distress or mental harm to the average person similarly situated to Plaintiff Cappel.

118.    As a result of Defendants' wrongful conduct, Plaintiff Cappel has suffered and continues to suffer severe and substantial monetary damages, as well as emotional distress, pain and suffering, loss of reputation, loss of future employability and public humiliation.  Further, Plaintiff has been compelled to file the within litigation to vindicate his rights.  Additionally, Plaintiff has been otherwise injured.

**WHEREFORE,** Plaintiff Cappel demands judgment against Defendants, jointly or severally, for the following relief:

   i.   Compensatory Damages, together with pre-judgment and post-judgment interest thereon;

   ii.   Additional consequential and incidental damages, in a sum to be determined at trial, together with pre-judgment and post-judgment interest thereon;

  iii.   An award of Compensatory Damages for pain and suffering;

  iv.   An award of Punitive Damages;

   v.   An award of attorney's fees and costs of suit; and

  vi.   Any such other relief that this Honorable Court deems equitable and just.

## DUTY TO PRESERVE

Defendants are hereby put on notice of their duty to preserve all evidence related to Plaintiff's claims, including but not limited to all electronic or written communication of whatsoever nature or kind, such as emails, letters, correspondence, memoranda, notes, journal entries, social media postings, text messages and/or instant messages in any forum, audio or video recordings, telephone messages and voicemails, business documents, personal files, personnel files, financial records and notes relating to those records, hard drives, SIM cards, and/or any other documents, writings, electronically stored data and/or tangible things of whatsoever nature or kind relating to the Plaintiff and/or any or all of the defendants, and/or Plaintiff's agents and/or Defendants and/or any of their agents. Should Defendant(s) negligently, recklessly or inadvertently destroy, alter, amend, change or adjust any of the above-referenced documents, sanctions will be sought in this litigation and an additional claim for spoliation/negligent concealment will be instituted.

## DESIGNATION OF TRIAL COUNSEL

VALERIE PALMA DELUISI, ESQ. is hereby designated as trial counsel for Plaintiff Anthony Cappel.

## TRIAL BY JURY

Plaintiff hereby requests trial by jury as to all matters so triable.

## <u>CERTIFICATION</u>

The undersigned attorney for Plaintiff Anthony Cappel hereby certifies that to the best of her knowledge, information and belief, the matter is controversy is not the subject of any action and/or arbitration proceeding other than stated above, nor is any other action or arbitration proceeding contemplated at this time.

The undersigned further certifies that to the best of her knowledge, information and belief, no other party should be joined in the within action at this time.  However, Plaintiff reserves his right to amend this Complaint as continuing discovery may reveal further causes of action and/or additional defendants with personal liability to Plaintiff.

Respectfully Submitted,
**LAW OFFICES OF NICHOLAS J. PALMA, ESQ., P.C.,**
*Attorneys for Plaintiff Anthony Cappel*

Dated: April 15, 2022          By:  /s/*Valerie Palma DeLuisi*
                               Valerie Palma DeLuisi, Esq.