UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANTHONY CAPPEL, | : : : : : : : : : : : : : : : : : : | Civil Action No. 22-2226 (JXN) (ESK)  OPINION |
| Plaintiff, | | |
| v. | | |
| COUNTY OF ESSEX, ARMANDO B. FONTOURA, Individually and in his official capacity as Sheriff of Essex County, JAMES SPANGO, Individually and in his official capacity as Chief of Essex County Sheriff's Office, JOHN GONCALVES, Individually and in his official capacity as Undersheriff of Essex County, and JOHN/JANE DOES 1-10, | | |
| Defendants. | | |

**NEALS**, District Judge:

This matter comes before the Court on Defendants Essex County, New Jersey ("Essex County"), Armando B. Fontoura ("Fontoura"), James Spango ("Spango"), and John Goncalves' ("Goncalves") (collectively, the "Defendants") motion to dismiss Plaintiff Anthony Cappel's ("Plaintiff") complaint (ECF No. 1) (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 15) (the "Motion"). Plaintiff opposed, and Defendants replied. (ECF Nos. 17, 21). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1367. Venue is proper pursuant to 28 U.S.C. § 1391.

The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Rule 78.1(b). For the reasons set forth below, the Motion (ECF No. 15) is **GRANTED in part** and **DENIED in part**. **GRANTED** as to Counts One and Six, which are **DISMISSED** *with prejudice*; Count Two, which

1

is **DISMISSED** *with prejudice* against Fontoura and Spango and *without prejudice* against Goncalves; and Counts Three, Four, and Five, which are **DISMISSED** *without prejudice*. Plaintiff may file an amended complaint no later than 30 days from the date of the accompanying Order, or by January 22, 2024.

I. **BACKGROUND AND PROCEDURAL HISTORY**[1]

This civil rights action arises out of Plaintiff's employment as an Essex County Sheriff's Officer. (Compl. ¶ 1). Plaintiff initially worked in the Sheriff's Office's Transportation Division (the "Transportation Division") where he was "under [] Goncalves' command." (*Id.* ¶ 11). Unlike the "custom and practice" in the Transportation Division, Goncalves required that he, and not one of the Sergeants, "approve Plaintiff's time-off" requests and did not allow Plaintiff "to take off on a Monday or Friday." (*Id.* ¶¶ 12, 14-16). Despite being reassigned to Essex County's Office of Emergency Management, which "remov[ed] [Plaintiff] from [] Goncalves' command[,]" Goncalves nevertheless ordered Plaintiff at least on one occasion to "report to the Transportation Division" to "operate a Sheriff's Office bus[.]" (*Id.* ¶¶ 23, 25-26, 28-29). Ultimately, Plaintiff was reassigned to the Transportation Division, which placed Plaintiff "back under [] Goncalves[']" command after he "declined" Fontoura's request "to volunteer to participate in the" West Orange St. Patrick's Day Parade. (*Id.* ¶¶ 31-34) (internal quotations omitted) (emphasis removed). Upon his transfer, "Goncalves' disparate treatment of Plaintiff" continued. (*Id.* ¶ 35).

Essex County Sheriff's Special Order 2020-45(A) required Sheriff's Officers to "wear a facemask or other face covering while in common areas." (*Id.* ¶ 36) (internal quotations omitted). Plaintiff wore a gaiter mask that is "commonly worn by Officers at [the] Essex County Sheriff's Office." (*Id.* ¶¶ 38-39). Goncalves ordered Plaintiff to remove it and "replace it with a different

---

[1] The following factual allegations are taken from the Amended Complaint, which the Court must accept as true when deciding a motion to dismiss. *Sheridan v. NGK Metals Corp.,* 609 F.3d 239, 262 n.27 (3d Cir. 2010).

mask." (*Id.* ¶¶ 40-41).  Plaintiff wore a different gaiter mask on a later date but was again ordered by Goncalves to remove it "and refrain from wearing gaiter masks in the future."  (*Id.* ¶¶ 49-50).  According to Plaintiff, none of the "white Officers and Superior Officers" were ordered to remove their masks.  (*Id.* ¶ 52).

To inform his Chain of Command, Plaintiff prepared an "internal report, referred to as a 151" that "outlined the harassment and discrimination" Plaintiff has "been suffering at the hands of [] Goncalves."  (*Id.* ¶ 53).  The 151 includes the "two instances" where Plaintiff "was singled out to remove his gaiter mask," and "expresse[s] Plaintiff's belief that he was being unfairly and unjustly targeted by [] Goncalves because [Plaintiff] is an African American."  (*Id.* ¶¶ 54-55).  Plaintiff submitted the 151 "to be sent up" to his Chain of Command that includes Goncalves, Spango, and Fontoura.  (*Id.* ¶¶ 5, 56-57, 60).  Two days later, Plaintiff was ordered to surrender his "duty weapon and ammunition magazines" and was no longer "permitted to carry the same." (*Id.* ¶¶ 61-62).  The Internal Affairs Bureau informed Plaintiff that "since his 151 contained the word stress, his weapon was being taken for his protection and he was being ordered to attend a psychological evaluation."  (*Id.* ¶¶ 63-64) (internal quotations omitted).  Plaintiff was also informed "that he would not be permitted to work" his scheduled "27 hours of overtime" and was reassigned to the "Bureau of Criminal Identification" or ("BCI").  (*Id.* ¶¶ 67-69).

"Plaintiff underwent a psychological evaluation with" Dr. Susan A. Furnari ("Dr. Furnari") who advised Plaintiff that he was "psychologically fit for duty" and that "she believed Plaintiff's 151 was taken grossly out of context."  (*Id.* ¶¶ 74-75).  Plaintiff then notified his union president, "President Robert Slater" ("President Slater"), of Dr. Furnari's finding. (*Id.* ¶ 76).  President Slater informed Spango that Plaintiff was "declared fit for duty" so he should be "immediately rearmed." (*Id.* ¶¶ 77-79).  President Slater also told Spango that Goncalves "has had numerous discrimination

3

complaints filed against him in the past" and that Sango's "failure to act is passive approval of Goncalves' ongoing discrimination." (*Id*. ¶ 79).

Approximately two weeks after being "found mentally fit," Plaintiff's duty weapon was "finally returned" to him. (*Id*. ¶ 82). Plaintiff, however, was not reassigned to the Transportation Division because Spango wanted him "removed from [] Goncalves' command[,]" which "cost Plaintiff the ability to earn overtime on a regular basis." (*Id*. ¶¶ 83-85). As a result, Plaintiff in part "suffered and continues to suffer severe and substantial monetary damages . . . ." (*Id*. ¶ 92).

On April 15, 2022, Plaintiff filed the Complaint alleging the following causes of action: (i) violation of the 14th Amendment of the United States Constitution (Count One); (ii) violation of 42 U.S.C. § 1983 (Count Two)[2]; (iii) violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("NJLAD") (Count Three); (iv) violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c) (the "Civil Rights Act") (Count Four); (v) violation of the Conscientious Employee Protection Act, N.J.S.A. § 34:19-1, *et seq.* ("CEPA") (Count Five); and (vi) intentional infliction of emotional distress (Count Six)[3]. This matter is ripe for consideration.

## II.     LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading is sufficient so long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation and ellipses omitted). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual

---

[2] Count Two is not alleged against Essex County.
[3] Plaintiff voluntarily withdrew the claim. (Opp. at 16). Accordingly, Count Six is dismissed *with prejudice*.

matter," to "state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted).

To determine whether a complaint is sufficient under these standards, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must "assume the[] veracity" of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (citations and internal quotations omitted).

### III.     DISCUSSION

#### A.     Count One - The Equal Protection Claim

Plaintiff concedes that Count One is procedurally defective. (Mem. of Law at 18-19[4]; Opp. at 27). To cure the defect, Plaintiff suggests "merg[ing]" Count One with Count Two or dismissing the claim *without prejudice*. (Opp. at 27). However, Defendants argue that Count One should be dismissed as "redundant". (Mem. of Law at 19-20). The Court agrees.

"Inasmuch as § 1983 affords a remedy for infringement of one's constitutional rights, identical claims raised under the Fourteenth Amendment are redundant, rendering the outcome of the § 1983 claims dispositive of the independent constitutional claims." *Capogrosso v. The Supreme Ct. of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (citation omitted). Here, because the constitutional violations alleged in Counts One are identical to those of Count Two (*see* Compl. ¶¶ 93-100), the claim is dismissed *with prejudice*. *See R.K. v. Y.A.L.E. Schools, Inc.*, 621 F. Supp. 2d 188, 199 n.13 (D.N.J. 2008); *Fid. & Guar. Ins. Underwriters, Inc. v. Omega Flex, Inc.*, 936 F.

---

[4] The Court refers to the ECF header page numbers for the documents discussed herein.

Supp. 2d 441, 447 (D.N.J. 2013).

### B. Counts Two[5] and Four - The § 1983 and Civil Rights Act Claims

Defendants argue that Counts Two and Four should be dismissed because Plaintiff failed to allege that he was treated differently than similarly situated individuals of a different race. (Mem. of Law at 20-23). The Court agrees.

§ 1983 and Civil Rights Act claims are analyzed similarly. *Duardo v. City of Hackensack*, No. 22-6779, 2023 WL 4418606, at *5 (D.N.J. July 10, 2023) (citation omitted). To state a § 1983 claim, a "plaintiff [must] prove two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citation omitted).

Here, the Complaint alleges that Fontoura, Spango, and Goncalves were "act[ing] under the color of state law" when they "deprived Plaintiff [] of equal protection rights, privileges and/or immunities secured by the 14th Amendment of the Constitution of the United States." (Compl. ¶¶ 99, 106). This, however, does not end the analysis because the basis for Counts Two and Four is the Equal Protection Clause of the Fourteenth Amendment. (Compl. ¶¶ 99, 106). Under the Equal Protection Clause, "no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation and internal quotations omitted). To state a claim, a "plaintiff must allege that: (1) he or she is a member of a protected class; and ([2]) he was treated differently than similarly situated" individuals of a different race.

---

[5] The Court agrees that the § 1983 claim should be dismissed against Fontoura and Spango because Plaintiff has not alleged facts "to state a claim for supervisor liability" (Mem. of Law at 22), which Plaintiff does not dispute. (*See, gen.,* Opp.). Accordingly, Count Two is dismissed *with prejudice* against Fontoura and Spango.

6

*Ragland v. Lanigan*, No. 14-458, 2014 WL 2534928, at *4 (D.N.J. June 4, 2014) (citation omitted). Defendants dispute whether Plaintiff's allegations satisfy the second prong.

In reviewing the Complaint, the Court finds that Plaintiff failed to state a claim under §1983 or the Civil Rights Act because he did not allege that he was treated differently than similarly situated individuals because of his race. *Schneyder*, 653 F.3d at 319. *See also Garden State Elec. Inspection Servs. Inc. v. Levin*, 144 F.App'x 247, 254 (3d Cir. 2005) ("Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects.") (citation and internal quotations omitted). Notably, the Complaint contains only one related allegation. *See* (Compl. ¶ 52) (alleging "white Officers" were not asked to remove their gaiter masks the same day Plaintiff was asked to remove his). A "bare allegation" that "race" was the reason he was asked to remove the mask (*see Kaul v. Christie*, 372 F. Supp. 3d 206, 254 (D.N.J. 2019)), does not demonstrate a plausible cause of action because Plaintiff alleges that on that day he wore a gaiter mask that had "the American flag in muted gray tones" and not the gaiter mask "with the Sheriff's Office logo on the front" that is "commonly worn by Officers at Essex County Sheriff's Office." (*Id.* ¶¶ 38-39, 49).

Additionally, alleging the presence of other similarly situated individuals of a different race ("white Officers") in a single allegation is not enough to "nudge[] [Plaintiff's] claims across the line from conceivable to plausible[.]" *Bell Atl. Corp.*, 550 U.S. at 570. To be sure, Plaintiff raises no other allegations in support of Counts Two and Four. *See* (*Id.* ¶ 103) (alleging in support of the NJLAD claim that he "was treated less favorably" because he is an African American). In considering a Rule 12(b)(6) motion to dismiss, the allegations "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp.*, 550 U.S. at 555. Here, because Plaintiff "does not allege the existence of any similarly situated" individuals who were not treated differently,

7

dismissal is appropriate. *Colombo v. Bd. of Educ. For Clifton Sch. Dist.*, No. 11-785, 2017 WL 4882485, at *5 (D.N.J. Oct. 29, 2017). Accordingly, Count Two, which is solely against Goncalves, is dismissed *without prejudice*, and Count Four is dismissed *without prejudice* against all Defendants.

### C. Count Three - The NJLAD Claim

Defendants argue that the NJLAD claim "must be dismissed because other than alleging that he belonged to a protected class, [Plaintiff] failed to sufficiently plead any of the other required elements" to allege an NJLAD claim. (Mem. of Law at 24). The Court agrees.

"[T]o establish a prima facie case for allegations of disparate treatment, a plaintiff must establish that: (1) he belongs to a protected class; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment action." *Rogers v. Alternative Res. Corp.*, 440 F. Supp. 2d 366, 371 (D.N.J. 2006) (citation omitted).

Here, the Court notes that Plaintiff alleged that he suffered an adverse employment action because he authored and submitted the 151. *See* (Compl. ¶¶ 61-64, 67-69, 83-85). Also, that Plaintiff is a member of a protected class. (Compl. ¶¶ 10, 102). The Court, however, finds that Plaintiff has not alleged that individuals not within the protected class did not suffer similar adverse actions. (Compl. ¶¶ 1-118). The Court also agrees that Plaintiff did not allege that "he was performing his job at a level that met" the Sheriff's Office's "legitimate expectations[.]" (Mem. of Law at 27). Accordingly, because Plaintiff failed to state a NJLAD claim, it is dismissed *without prejudice*.[6]

---

[6] The Court does not address whether the claim should be dismissed for failure to allege aiding and abetting. (Mem. of Law at 27-29). Because the claim is dismissed *without prejudice*, the Court agrees that Plaintiff may correct this purported deficiency by re-pleading the claim. (Opp. at 26).

8

### D. Count Five - The CEPA Claim

#### 1. Plaintiff States a Plausible CEPA Claim

Defendants argue that Plaintiff failed to state a CEPA claim because he "has not sufficiently pled that he had a reasonable belief that Defendants' conduct was violating either a law, rule, regulation or public policy, or that a retaliatory adverse employment action was taken against him." (Mem. of Law at 30). The Court disagrees.

CEPA provides in relevant part that:

> An employer shall not take any retaliatory action against an employee because the employee . . . [d]iscloses . . . to a supervisor or to a public body any activity, policy or practice of the employer, . . . that the employee reasonably believes . . . is in violation of a law . . . or . . . is fraudulent or criminal[.]

N.J.S.A. 34:19-3(a.)(1)-(2).

To allege a CEPA claim, a plaintiff "must show: (1) a reasonable belief that her employer's conduct violated a law . . .; (2) a whistle-blowing activity; (3) an adverse employment action; and (4) a causal connection between her whistle-blowing activity and the adverse employment action." *Smith v. Township of East Greenwich*, 519 F. Supp. 2d 493, 510 (D.N.J. 2007) (citations omitted).

Here, Plaintiff argues that in drafting and submitting the 151, he "performed a whistleblowing activity" (*see* Opp. at 19), under N.J.S.A. (a.) (disclosing the potential violations) or (c) (objecting to or refusing to participate in activities that may be violative). And that he suffered an adverse employment action thereafter. (Opp. at 20). The Court agrees.

Plaintiff alleges that because he "blew the whistle on conduct that [he] believed in good faith to be illegal, unsafe, against County policy, [and/or] against public policy[,]" Defendants took "adverse employment action[s] against [him][.]" (Compl. ¶¶ 109, 11) (internal quotations omitted). Plaintiff further alleges that after submitting the 151, he was reassigned, asked to

9

surrender his duty weapon, required to attend a psychological evaluation, and could no longer work overtime. (Compl. ¶¶ 53, 55-56, 60-62, 64, 67-69, 85). At this juncture, such allegations are sufficient to state a claim. *See Hargrave v. County of Atlantic*, 262 F. Supp. 2d 393, 427 (D.N.J. 2003) (describing adverse employment actions).

### 2. Plaintiff Fails to Plead CEPA Liability

Defendants argue that Plaintiff has not sufficiently pled individual liability against Goncalves, Fontoura, and Spango because he did not allege that these defendants "personally" undertook the adverse employment action. (Mem. of Law at 32-33). The Court agrees.

A "person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's *consent*" can be held liable under CEPA. N.J.S.A. 34:19-2(a) (emphasis added). "[T]he requirement of consent simply reflects normal agency respondeat superior principles rather than the idea that employers can only be held liable for the actions of their employees if the employers specifically consent to the actions taken by their employees." *Palladino ex rel. U.S. v. VNA of Southern New Jersey, Inc.*, 68 F. Supp. 2d 455, 471 (D.N.J. 1999) (citation and internal quotations omitted). Thus, CEPA creates individual liability for "supervisory employees." *Id.* at 476. Importantly, "CEPA liability can also be imposed on individuals, such as indirect supervisors and co-workers who allegedly participated in the retaliatory scheme." *Curley v. Mercury Ins. Servs.*, LLC, No. 21-12259, 2022 WL 445633, at *4 (D.N.J. Feb. 10, 2022) (citation omitted).

Here, the Complaint alleges that when Plaintiff "submitted the 151[,]" it was "to be sent up the Chain of Command[,]" which includes Goncalves, Spango, and Fontoura. (Compl. ¶¶ 56-57). Two days later, Plaintiff was ordered to surrender his "duty weapon and ammunition magazines." (*Id.* ¶ 62). While Plaintiff's duty weapon was eventually returned, Plaintiff was not

10

reassigned to the Transportation Division, thus restricting him from working overtime. (*Id.* ¶¶ 82-85). In viewing the allegations as true, however, the Court finds that there is not a sufficient factual basis to infer that Goncalves, Spango, and Fontoura, as Plaintiff's supervisors in the Chain of Command, "allegedly participated in the retaliatory scheme." *See Curley*, 2022 WL 445633, at * 4. Indeed, the Court agrees that Plaintiff has not alleged that the individual defendants were "personal[ly] involve[d], [took some] action, or" knew of the alleged adverse employment actions taken against Plaintiff. (Mem. of Law at 33-34). Plaintiff argues that "it should be at least inferred if not assumed that Defendants would follow their own outlined policy and procedure" because they are the same "individuals in the chain of command[.]" (Opp. at 23). Aside from this conclusory argument, the Complaint does not allege facts with the required particularity as outlined above. Accordingly, the CEPA claim is dismissed *without prejudice*.

## IV.     CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (ECF No. 15) is **GRANTED in part** and **DENIED in part**.

An appropriate Order accompanies this Opinion.

DATED: 12/21/2023

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
United States District Judge